# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ANJELA GREER,

    *Plaintiffs,*

vs.

    Case No. 16-1185-EFM-JPO

CITY OF WICHITA, KANSAS,
WICHITA ART MUSEUM, and,
PATRICIA McDONNELL,

    *Defendants.*

## MEMORANDUM AND ORDER

Before the Court is Plaintiff Anjela Greer's Motion for Leave to Amend her First Amended Complaint (Doc. 75). But prior to the filing of that latest motion, the Defendants—the City of Wichita ("the City"), the Wichita Art Museum ("WAM"), and Patricia McDonnell—filed a Joint Motion to Dismiss Greer's First Amended Complaint (Doc. 37). Because Greer's proposed Second Amended Complaint could arguably modify some the claims in the First Amended Complaint that the Defendants move to dismiss, the Court must determine whether Greer may again amend her Complaint. Because Greer has not shown good cause to untimely amend her complaint, her Motion for Leave to Amend is denied. And because she fails to adequately state any claims under Kansas law in her First Amended Complaint, the Defendants' Motion to Dismiss is granted.

## I. Background

### A. Greer's Original Complaint

Plaintiff Angela Greer initiated this action on June 9, 2016. In her Original Complaint (Doc. 1), Greer named three Defendants: The City, WAM, and McDonnell—WAM's director. Greer is a member of the United States Navy Reserve, and was employed by WAM. Greer alleged that during the course of her employment, she was mistreated and denied promotions because of her military service. She also alleged that the City refused to grant her interviews for other positions to which she had applied. Greer asserted that the City had "committed to all of its employees to protect them from discrimination, harassment and illegal treatment" and had also "committed to military veterans in its employ that it will afford them all legitimate rights and privileges available to veterans."

Ultimately, Greer alleged that the City, WAM, and McDonnell violated the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), the Kansas Act Against Discrimination ("KAAD"), and her veteran's preference rights. Greer also claimed that the City and WAM violated her rights at common law. The Complaint provided no further detail as to what exactly the Kansas common law claims were or how many common law claims were being asserted.

### B. Greer's First Amended Complaint

On September 19, 2016, Greer filed an unopposed motion for extension of time to amend her complaint as a matter of course (Doc. 19). In that motion, Greer stated that she intended "to amend her Complaint as a matter of course to set forth her common law claims therein with greater particularity." The Court granted that motion. Around the same time, the Court issued

the First Scheduling Order in this case (Doc. 24). The deadline for motions to amend was November 30, 2016. The Court later extended that deadline to December 21, 2016.[1]

On October 12, Greer filed her First Amended Complaint (Doc. 26). The First Amended Complaint no longer alleges violations of KAAD. But it does not do much to set forth the common law claims with greater particularity, as Greer had stated she was going to do. The First Amended Complaint states simply that "[t]his action arises out of violations of the common law." The First Amended Complaint still alleges that the City has committed to afford veterans it employed "all legitimate rights and privileges available to veterans" and lays out the many ways in which Greer was mistreated. But Greer does not specify which specific common law claims she is alleging. At the end of the First Amended Complaint, Greer again states that the City, WAM, and McDonnell have violated her rights under USERRA as well as her veteran's preference rights. New in her First Amended Complaint is an allegation that WAM and McDonnell "wrongfully interfered with Ms. Greer's Veteran's Preference rights by influencing the City to refuse to interview her for jobs for which she had applied and met the minimum qualification requirements."

**C.      Defendants' Motion to Dismiss Greer's First Amended Complaint**

On November 30, 2016, the City, WAM, and McDonnell filed a Joint Motion to Dismiss Greer's First Amended Complaint (Doc. 37). In their Rule 12(b)(6) motion, the Defendants move to dismiss any and all of Greer's non-USERRA claims. The Defendants argue that Greer's bare assertion that they committed "violations of the common law" fails to state a plausible claim for relief.

---

[1]     On February 22, 2017, the Court issued an amended scheduling order that set new deadlines for certain filings, but did not alter the deadline that had already passed for motions to amend.

Greer responded to the motion (Doc. 44), stating that in her First Amended Complaint, she had sufficiently stated claims for both breach of contract and tortious interference with a business relationship, which are Kansas common law causes of action. The Defendants' Motion to Dismiss is currently pending before this Court.

**D.     Greer's Motion for Leave to File a Second Amended Complaint**

On March 23, 2017, Greer filed a Motion for Leave to File a Second Amended Complaint (Doc. 75). In this latest motion, Greer states that she wishes to make it clear that she is also seeking a remedy under Kansas's Veteran's Preference Act ("VPA"), K.S.A. § 73-201, *et. seq.*, in addition to her claims under USERRA and Kansas common law. The Defendants oppose Greer's motion for leave to amend yet again, arguing that Greer has not shown good cause for the amendment.

## II.     Discussion

**A.     Greer's Motion for Leave to File Second Amended Complaint**

The Court will first address Greer's Motion for Leave to File a Second Amended Complaint. Because Greer seeks to amend her complaint after the scheduling order deadline, she must establish good cause for doing so.[2] And in addition to showing good cause, she must also satisfy the requirements of Fed. R. Civ. P. 15(a).[3] Greer asserts that her proposed amendment would clarify her claims. She states:

> Plaintiff believes that she has Veteran's Preference rights which arise at common law and by virtue of the Kansas Veteran's Preference Statute, K.S.A. 73-201, *et seq.* Although the First Amended Complaint states that Plaintiff's claims are based in part on her "Veteran's Preference" rights, it does not state that the Kansas Veteran's Preference Statute is one source of those rights. Plaintiff

---

[2] *Gorsuch Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014).

[3] *Id.*

wishes to rectify this and eliminate any claim of prejudice or surprise that the Kansas Veteran's Preference statute is a separate source for her Veteran's Preference Rights.

The proposed Second Amended Complaint adds a line declaring that "[t]his action arises out of violations of the Kansas Veteran's Preference Law, K.S.A. 73-201 *et seq*." And elsewhere, the proposed Second Amended Complaint states that the City is subject to the provisions of the VPA, and that as a City employee, Greer is entitled to the rights and benefits conferred by the VPA.

To compare, the First Amended Complaint similarly alleges violations of Greer's veteran's preference rights, but does not explain the source of those rights. For example, the First Amended Complaint states simply that the City "has committed to military veterans in its employ that it will afford them all legitimate rights and privileges to veterans." Elsewhere, the First Amended Complaint states that Greer was entitled a veteran's preference as a City employee, without reference to the VPA. Apparently, Greer believes that her Second Amended Complaint will make clear that through her employment, Greer had veteran's preference rights arising from two sources: Kansas statute and her employment contract, which presumably guaranteed veteran's preference rights as well.

The deadline in this case for a motion to amend was December 21, 2016. And so, Greer's March 23, 2017, motion for leave to amend is untimely. Therefore, she must show good cause for the amendment, as set out in Fed R. Civ. P. 16(b)(4).[4]

Greer notes that the discovery cutoff for this case is June 9, 2017, and asserts that the Defendants have not yet filed an answer due to their pending motion to dismiss. Greer also

---

[4] *Gorsuch Ltd.*, 771 F.3d at 1241.

references her response to the Defendants' interrogatories in which she made it clear that she is alleging a violation of the VPA. She claims that her Second Amended Complaint merely clarifies her already-asserted VPA claim. Greer asserts that her attempt to clarify constitutes good cause and that it will not cause any undue delay.[5]

Conversely, the Defendants argue that Greer has not shown good cause for her proposed amendment. To begin, they reject Greer's assertion that her First Amended Complaint already contains a VPA claim. They argue that Greer is really trying to "backdoor" in a new claim that was not alleged earlier. The Defendants note that Greer does not allege any new facts or a change to the underlying law. Rather, she could have alleged a violation of the VPA earlier but failed to do so. According to the Defendants, Greer simply failed to raise a VPA claim in both her Original and First Amended Complaint, and her attempt to add the claim now does not constitute good cause.

Examples of good cause are situations in which a plaintiff learns new information through discovery or if the underlying law has changed.[6] But a plaintiff cannot show good cause where she knew of underlying conduct but simply failed to raise a claim initially.[7] Ultimately, Greer must show that she could not meet the scheduling order's amendment deadline despite her diligent efforts to do so.[8]

---

[5] Greer cites to no authority supporting her assertion that an attempt to clarify a complaint constitutes good cause under Rule 16.

[6] *Id.* at 1240.

[7] *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1248-49 (10th Cir. 2015); *Gorsuch Ltd.*, 771 F.3d at 1240.

[8] *Birdsong v. Unified Gov't of Wyandotte Cty.*, 2016 WL 3855488, at *4 (D. Kan. 2016) (citing *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1366 (10th Cir. 1993)).

Greer argues that the entire purpose of her proposed amendment is to make it clear that she intended to bring a VPA claim from the very start of this case. But she provides no explanation as to why this clarification did not come until eight months after she filed her initial Complaint, and three months after the deadline for amending it has passed. No new facts have been discovered. In each Complaint, the Defendants' alleged conduct is the same. And although the VPA has evolved over time, the "concept of a veterans' preference was first conferred by the Kansas legislature in 1886."[9] In other words, Greer has not learned any new information, and the underlying law is not new. Greer was, or should have been, well aware of the VPA before the deadline to amend her pleadings. And indeed, Greer cited the statute in responding to the Defendants' interrogatory. But for some unknown reason, Greer chose not to cite or identify the statute in either her Original or First Amended Complaint. The Court will not speculate as to why that is, but in any event, she has not shown good cause to clarify her allegations now.

Greer has always had the factual basis for her proposed VPA claim. Her failure to allege it with greater particularity before December 21, 2016, constitutes a lack of diligence.[10] Accordingly, her Motion for Leave to File a Second Amended Complaint is denied. Greer maintains that she has always alleged a VPA claim in this case. That assertion will now be tested in the Court's consideration of the Defendants' Motion to Dismiss all of Greer's non-USERRA claims.

---

[9] Kan. Att'y Gen. Op. No. 06-21, 2006 WL 2398765, at *2 (Aug. 17, 2006).

[10] *J. Vangel Elec., Inc. v. Sugar Creek Packing Co.*, 2012 WL 5995283, at *2 (D. Kan. 2012) ("Because Defendant had access to the factual basis to bring its proposed counterclaims . . . long before the Scheduling Order deadline, the Court concludes that Defendant's failure to timely amend its counterclaim constitutes a lack of diligence. Therefore, the Court holds that Defendant has failed to carry its burden of demonstrating 'good cause' under Rule 16(b)(4).").

**B.     Defendants' Motion to Dismiss Greer's First Amended Complaint**

The Court now turns to the Defendants' Joint Motion to Dismiss. In that motion, the Defendants move to dismiss all of Greer's claims brought under Kansas common law as well as any other non-USERRA claims.

*1.     Legal Standard*

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted. Upon such a motion, the Court must decide "whether the complaint contains enough facts to state a claim to relief that is plausible on its face."[11] A claim is facially plausible if the plaintiff pleads facts sufficient for the Court to reasonably infer that the defendant is liable for the alleged misconduct.[12] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well as the grounds on which each claim rests.[13] The Court must accept all of the factual allegations in the complaint as true.[14] But the Court need not afford such a presumption to legal conclusions.[15] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible."[16]

---

[11] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[12] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

[13] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008); *see also* Fed. R. Civ. P. 8(a)(2).

[14] *Iqbal*, 556 U.S. at 678-79.

[15] *Id.*

[16] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted).

## 2. *Common Law Claims*

The Defendants move to dismiss all of the common law violations alleged in Greer's First Amended Complaint. They argue that Greer's bare assertion that "[t]his action arises out of the common law" fails to state a plausible claim for relief. For that reason, the Defendants assert that the First Amended Complaint contains "no cognizable claim alleged under a Kansas 'common law' theory of recovery."

In response, Greer claims that "[a]s is set out in the First Amended Complaint, Ms. Greer is entitled to Veteran's Preference treatment as part of her contract of employment with the City of Wichita." Accordingly, Greer argues that the City's refusal to honor that right was a breach of its contract. She further argues that WAM's and McDonnell's attempts to prevent her from obtaining other jobs with the City constituted tortious interference with a prospective business relationship. Thus, Greer contends that the "common law' claims asserted in the First Amended complaint are claims for breach of contract and tortious interference with a business relationship.

In her opposition to the Defendants' motion to dismiss, Greer claims that her First Amended Complaint clearly lays out claims for breach of contract and tortious interference with a business relationship. But it matters not what Greer says in her response, all that matters are the words contained in her First Amended Complaint.[17] And so, the Court will look to the First Amended Complaint to determine whether it can find the common law claims that Greer argues she has hidden therein.

---

[17] *MacArthur v. San Juan Cty*, 309 F.3d 1216, 1221 (10th Cir. 2002) (citing *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 960 (10th Cir. 2001) ("In deciding a Rule 12(b)(6) motion, a federal court generally 'should not look beyond the confines of the complaint itself.' ").

a. Breach of Contract

As noted in her response, Greer asserts that her First Amended Complaint alleges breach of contract. According to the response, Greer entered into an employment contract with the City that guaranteed her veteran's preference, and by its conduct, the City breached that contract. In actuality, the First Amended Complaint states that the City "has committed to military veterans in its employ that it will afford them all legitimate rights and privileges available." It also notes that Greer, specifically, was entitled to veteran's preference as a City employee. Finally, at the end of the First Amended Complaint, Greer states that the City "violated Ms. Greer's Veteran's Preference rights." Greer argues that from those assertions, the Court can ascertain a claim for breach of contract. She is wrong.

To properly allege a claim for breach of contract, a plaintiff "must allege facts supporting the elements of breach of contract under Kansas law."[18] And while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in her complaint, the elements of the alleged offense help the Court to determine whether she has set forth a plausible claim.[19] Here, those elements are (1) the existence of a contract, (2) consideration, (3) the plaintiff's compliance with the contract, (4) the defendant's breach, and (5) damages as a result of the breach.[20] Rule 8 does not require that these elements be alleged in detail, but at the very least, a plaintiff must "describe the alleged terms of the contract in a sufficiently specific manner to give the defendant

---

[18] *Sylvia v. Wisler*, 2014 WL 2772909, at *4 (D. Kan. 2014).

[19] *Morman v. Campbell Cnty Mem'l Hosp.*, 632 F. App'x 927, 932 (10th Cir. 2015) (citing *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012)).

[20] *See, e.g., Britvic Soft Drinks Ltd. v. ACSIS Techs., Inc.*, 265 F. Supp. 2d 1179, 1187 (D. Kan. 2003).

notice of the nature of the claim."[21] For example, a claim for breach could (1) quote relevant contract language, (2) attach a copy of the contract, or (3) summarize the contract's purported legal effect.[22]

But the Complaint does none of this. It does not allege the existence of a contract or agreement.[23] It does not represent that any promises were made. It does not allege terms that were bargained for or consideration that supported any supposed agreements. Even if the Court assumes that an employment contract exists, Greer would still need to allege with some specificity its formation and the terms that were breached.[24]

Greer might argue that she alleged a contract by asserting that the City had made commitments to veterans, but a vague commitment does not a contract make. But this assertion falls short. Did the City make a promise to Greer? Was it supported by consideration? Was it agreed to by both parties? Did Greer comply with the agreement? Similarly, Greer might argue that she alleged a contract by asserting that as a City employee, Greer was entitled to veteran's preference rights. But those assertions also fail to allege a contract. From where, specifically, does that entitlement arise? Apparently Greer believes that it arises from her employment contract, but the First Amended Complaint makes no such allegation. From the First Amended

---

[21] *Am. Realty Tr., Inc. v. Travelers Cas. & Sur., Co.*, 362 F. Supp. 2d 744, 753 (N.D. Tex. 2005).

[22] *Id.*

[23] While the Court can presume an employment contract based on Greer's allegation of employment with the City, "absent an express or implied contract, Kansas law presumes employment to be at will." *Litton v. Maverick Paper Co.*, 354 F. Supp. 2d 1209, 1217 (D. Kan. 2005). Therefore, in order to assert contractual veteran's preference rights, Greer must allege the specific agreement and terms giving rise to such rights.

[24] *Khair v. Countrywide Home Loans, Inc.*, 2010 WL 2486430, at *4 (E.D. Va. 2010) (finding that a plaintiff failed to state a claim for breach of contract where he failed to "allege any facts as to the nature or substance of the alleged contract, when it was entered into, or whether it was written or oral."); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1235, 388 (3d ed. 2004) ("Not surprisingly, numerous cases . . . conclude that a complaint in a contract action must allege the existence of a valid and binding contract.").

Complaint, it is just as likely that this entitlement arises from the VPA, the common law, or some other statute or regulation. Nothing in the First Amended Complaint suggest that the City was contractually obligated to provide Greer a veteran's preference.

Greer argues that she is not required to provide a "contract" label in her Complaint in order to state a claim for breach of contract because she is "not required to specifically identify her causes of action." Rather, the Complaint must merely state Greer's claim for relief. This is true enough, but misses the point. The First Amended Complaint could have stated a claim for breach of contract in several ways without providing the "contract" label. There are no magic words; it could allege breach of a contract, agreement, promise, or any other binding instrument, but it must allege something.

Rule 8(a)(2) sets forth very liberal pleading requirements. All that is a required is a short, plain statement of the claim, giving the Defendants fair notice of the grounds upon which it rests.[25] But here, the First Amended Complaint falls short of that liberal requirement. In a contract case, a short, plain statemet must include, *at the very least*, the existence of contract and the way in which its terms were breached. Greer's First Amended Complaint fails to do so. Accordingly, Greer has failed to state a claim for breach of contract

        b.        Tortious Interference with a Business Relationship

The First Amended Complaint also fails to state a claim for tortious interference with a contract or a business relationship. As noted above, the First Amended Complaint fails to state a claim for breach of contract in part because it fails to allege the existence of a contract.

---

[25] Fed R. Civ. P. 8(a)(2); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

Accordingly, the First Amended Complaint also fails to state a claim for tortious interference with a contract.[26]

Thus, if her claim survives, it must survive as one for tortious interference with a business relationship. The elements of a claim of tortious interference with a business relationship are (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) a reasonable certainty that, except for the conduct of the defendant, plaintiff would have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) incurrence of damages by plaintiff as a direct or proximate result of defendant's misconduct.[27] As laid out in her response to the Defendants' motion to dismiss, Greer asserts that WAM and McDonnell interfered with her prospective business relationships by obstructing her attempts to apply for promotions or other jobs for which she was qualified. But the First Amended Complaint fails to state a claim for tortious interference because WAM and McDonnell were not unrelated third parties, and there is no allegation that they knew of or interfered with Greer's applications for other City positions.

To the extent that Greer's allegations are related to interference with her ability to get a promotion at WAM, her claims must fail. Her argument, presumably, is that WAM and McDonnell tortiously interfered with her opportunity to apply to the City for other positions within WAM. But the First Amended Complaint states that the City "has ceded to Defendants Wichita Art Museum and McDonnell all relevant employment decisions." The tort of

---

[26] *See Cohen v. Battaglia*, 296 Kan. 542, 293 P.3d 752, 755 (2013) (noting that the first element of a claim for tortious interference with a contract is the existence of a contract).

[27] *Id.*

interference with a prospective business relationship protects expected relationships with third parties.[28] But one cannot tortiously interfere with a business relationship unless he or she is an unrelated third party.[29] Although she was City employee, Greer alleges that she worked at WAM under McDonnell's supervision. And so, Greer's allegation is that her employer and supervisor interfered with her ability to get a different job with the same employer, presumably under the same supervisor. If WAM and McDonnell truly had authority over all employment decisions, as Greer alleges, then they cannot be liable for interfering with those very decisions. The tort of interference with a business relationship does not apply to such conduct.[30]

Nor does the First Amended Complaint adequately state a claim that WAM and McDonnell tortiously interfered with business relationships outside of WAM. In two separate paragraphs, Greer alleges that the City refused to grant her an interview for a position at the airport and a position with the police department. She does not allege that McDonnell or WAM had any influence or say in the matter, or that they were even aware that she had applied for the positions.[31] Therefore, Greer fails to allege that the City refused to interview her for those positions as a result of McDonnell or WAM's tortious interference.

---

[28] *Stead v. Unified Sch. Dist. No. 259, Sedgwick, Cty., Kan.*, 92 F. Supp. 3d 1088, 1111 (D. Kan. 2015).

[29] *Norris v. Univ. of Kan.*, 2010 WL 2044934, at *4, 230 P.3d 461 (Kan. App. 2010) (unpublished table opinion) (noting that a third party unrelated to an employment contract must tortiously interfere for the cause of action to exist).

[30] *Diederich v. Yarnevich*, 40 Kan. App. 2d 801, 196 P.3d 411, 418 (2008) ("[D]irectors and officers of a corporation cannot be liable for tortious interference with an employment contract that they have legal authority to cancel.").

[31] *Cohen*, 293 P.3d at 755 (noting that both knowledge of the business relationship and intentional misconduct by the defendant are elements of a tortious interference claim).

Greer fails to adequately allege that McDonnell and WAM tortiously interfered with a contract or business relationship. Accordingly, the First Amended Complaint fails to state a claim under that theory, and both of her common claims are dismissed.

3.  *Kansas Veteran's Preference Statute*

Although she does not address it in her response to the Defendants' motion to dismiss, Greer asserted in her motion for leave to amend that she was also bringing a claim under the Kansas VPA. She contends that such a claim has always been contained in her First Amended Complaint, so presumably, she would oppose its disposal as part of the Defendants' motion to dismiss all non-USERRA claims. Accordingly, the Court will look at Greer's First Amended Complaint to determine whether she has adequately stated a VPA claim.[32]

The relevant allegations contained in the First Amended Complaint are as follows. Greer notes that she is an active member of the United States Navy Reserve, and refers to herself as a "veteran employee." In addition, Greer alleges that as a City employee, she "is entitled to a 'Veteran's Preference' which means that she may apply for a City job for which she is qualified and the City is obligated, among other things, to give her an interview for job." Attached to the First Amended Complaint is a form, dated October 3, 2008, which appears to reflect orders for Greer to report to active duty. At the end of her First Amended Complaint, Greer alleges that the City "violated [her] Veteran's Preference rights by refusing to grant her interviews for jobs for

---

[32] There is some dispute as to whether the VPA would apply to WAM and McDonnell. *See* K.S.A. § 73-201(c) (noting that the Veteran's Preference statute applies only to employment and promotion "in the state government of Kansas, and in the counties and cities of this state."); *see also Little v. State*, 34 Kan. App. 2d 557, 121 P.3d 990, 997 (2005). On one hand, Greer alleges that WAM is a not for profit corporation, but on the other hand, she also alleges that the City delegated its employment decisions to WAM and McDonnell. Further, she alleged that she applied to the City in order to work for WAM. For that reason, the Court dismissed Greer's tortious interference claim. But given Greer's failure to adequately allege that the VPA applied to her, the Court need not consider whether or not it applied to WAM and McDonnell as well.

which she had applied and met the minimum qualification requirements." She further alleges that WAM and McDonnell "wrongfully interfered with [her] Veteran's Preference rights by influencing the City to refuse to interview her for jobs for which she had applied and met the minimum qualification requirements."

The VPA provides that "[v]eterans shall be preferred for initial employment and first promotion in the state government of Kansas, and in the counties and cities of this state, if competent to perform such services."[33] Relevant here, the statute defines a "veteran" as

> (A)  Any person who entered the armed force before October 15, 1976, and separated from the armed forces under honorable conditions, if such person served: (i) On active duty during any war . . . ; (ii) during the period April 28, 1952 through July, 1 1955; (iii) in any campaign or expedition for which a campaign badge or service medal has been authorized; or (iv) for more than 180 consecutive days since January 31, 1955, but before October 1976, excluding an initial period of active duty for training under the "six-month" reserve or national guard program.
>
> (B)  any person who entered the armed forces on or after October 15, 1976, and separated from the armed forces under honorable conditions, if such person was awarded a service medal or campaign badge.
>
> (C)  any person who separated from the armed forces under honorable conditions and has a disability certified by the United States department of veterans affairs as being service connected, has been issued the purple heart by the United States government or has been released from active service with a service-connected disability.[34]

The statute also defines as a "veteran" the spouse of certain individuals who have served in the armed forces, but those definitions are irrelevant here.[35]

---

[33] K.S.A. § 73-201(c).

[34] K.S.A. § 73-201(a)(1)(A)-(C).

[35] *See* K.S.A. § 73-201(a)(1)(D)-(F).

Although Greer makes no allegations about the date on which she joined the Navy Reserves, her attached exhibit indicates that she joined the Navy Reserves around July 2001.[36] And she alleges that she was actively deployed to Kuwait as recently as 2008. So the Court can safely assume that Greer did not join the armed forces before October 15, 1976, and thus, § 73-201(1)(A) does not apply. Accordingly, for the Veteran's Preference statute to apply, Greer would have to allege that she separated from the Navy under honorable conditions and either (1) was awarded a service medal or campaign badge or (2) suffers from a service-connected disability or earned a purple heart.[37] Greer alleges neither.[38] In fact, Greer alleges that she "is, and at all times material has been, a member of the United States Navy Reserve." In making that allegation, Greer has actually demonstrated on the face of her Complaint that the VPA does not apply to her.[39]

The VPA only applies to certain individuals, and in all cases, those individuals have either separated from the military or are the spouse of a veteran. By alleging that she is an active member of the Navy Reserves, Greer has failed to show that she is entitled to relief under the VPA.[40] All told, Greer fails to make any factual allegations that would indicate that she is a "veteran" as understood in the VPA.

---

[36] Exhibit 2, which Greer calls her DD214 Form, reflects a Pay Entry Base Date of July 18, 2001.

[37] K.S.A. § 73-201(a)(1)(B)-(C).

[38] Although Greer does allege that as a city employee she was entitled to veteran's preference rights, that assertion is merely a legal conclusion, which the Court is not required to accept as true. *See Iqbal*, 556 U.S. at 678.

[39] 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357, 700 (3d ed. 2004) (noting that a Rule 12(b)(6) motion is likely to be granted when "the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to securing relief.").

[40] *See* K.S.A. § 73-201(a)(1)(A)-(C); Greer also fails to allege she suffered a service-connected disability or was awarded a service medal, campaign badge, or a purple heart. *See* K.S.A. § 73-201(a)(1)(B)-(C).

Because Greer has not alleged that she is a "veteran" as defined in K.S.A. § 73-201(a), she fails to state a claim under that statute. Accordingly, her VPA claim is dismissed.

### III. Conclusion

Because Greer has failed to show good cause to amend her First Amended Complaint, the Court denies her Motion for Leave to Amend (Doc. 75). And for the reasons stated above, Greer fails to state a claim for either breach of contract or tortious interference with a business relationship in her First Amended Complaint. Furthermore, she also fails to state claim for violation of the Kansas VPA. Accordingly, the Court grants the Defendants' Joint Motion to Dismiss (Doc. 37). All of Greer's non-USERRA claims are dismissed.

**IT IS THEREFORE ORDERED** that Greer's Motion for Leave to Amend Complaint (Doc. 75) is **DENIED.**

**IT IS FURTHER ORDERED** that the Defendants' Joint Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 37) is **GRANTED.** Only Greer's USERRA claims remain in this case.

**IT IS SO ORDERED**.

Dated this 26th day of April, 2017.

*Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE