# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ANJELA GREER

    *Plaintiff,*

vs.

Case No. 16-1185-EFM-JPO

CITY OF WICHITA, KANSAS,
WICHITA ART MUSEUM, INC., and
PATRICIA McDONNELL

    *Defendants.*

## MEMORANDUM AND ORDER

Plaintiff Anjela Greer brings a claim under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301 et seq., against Defendants City of Wichita, Kansas; Wichita Art Museum, Inc.; and Patricia McDonnell. Plaintiff is a member of the United States Navy Reserves. She claims that Defendants discriminated against her, based on her military affiliation and/or obligations, when they did not consider her for the position of Museum Operations Supervisor in July 2014. All Defendants now seek summary judgment asserting that Plaintiff was not qualified for the position and that there is no evidence of discriminatory treatment due to her military status (Docs. 141, 145). Because the Court finds that Plaintiff cannot establish a question of fact as to whether her military status was a motivating factor in Defendants' decision to disqualify her for the position, the Court grants Defendants' motions.

## I.     Factual and Procedural Background

Plaintiff Anjela Greer enlisted in the Navy Reserves in 1998 and has served since that time. The U.S. Navy requires her attendance at training one day a month and two weeks a year. She is also subject to call-up and deployment.

In 2008, Plaintiff applied for the position of security guard at Defendant Wichita Art Museum ("WAM") with Defendant City of Wichita, Kansas. The City of Wichita ("the City") is a municipal corporation, and WAM is a not-for-profit corporation. The City and WAM have a joint operating agreement. Part of this agreement includes staffing. Most employees at WAM work for the City but some work for WAM. Historically, the only full-time employee of WAM was the Director. Defendant Patricia McDonnell has been the Director since August 2012.

The City hired Plaintiff as a "custodial guard," a non-supervisory position. Shortly after she was hired, Plaintiff was deployed to Kuwait for a year. The City of Wichita held the position for her during the duration of her deployment.

Plaintiff returned to Wichita in October or November 2009. She began her employment with the City as a full-time security guard for WAM on November 29, 2009. She was assigned first shift security guard.

When Plaintiff began work, Mike Seis supervised her in his position of Museum Operations Supervisor ("MOS"). The MOS was and is employed by the City. The MOS is responsible for supervising the security guards on a day-to-day basis.

Within one month of beginning her employment, Seis switched Plaintiff to the second shift. Plaintiff testified that Seis also assigned Plaintiff the title of Second Shift Supervisor. There was no interview or a pay increase. There is only one security guard on duty at WAM for the second shift, unless there are special events in the evening. Plaintiff says that her supervisory duties

included giving permission to leave early, correcting employees' behavior as appropriate, and consulting with Seis on employee evaluations and scheduling.

Terri Poynter is WAM Director McDonnell's executive assistant, and Poynter routinely works with McDonnell on a daily basis. Seis stated that Poynter complained about Plaintiff's military service and training obligations. Plaintiff said that Poynter personally said to her that she did not know why WAM kept her because Plaintiff was always gone for military leave and obligations.

In April 2014, Plaintiff inquired with McDonnell about a weekend guard supervisor position that had recently become available. Plaintiff stated that McDonnell laughed about it. Plaintiff also stated that McDonnell said that you're still in the military, military thing, the crap, and you're not going to be considered or promoted or you're not going to do anything here.[1]

On April 15, 2014, McDonnell recommended to the City that Seis be terminated from his employment as MOS, and the City did so. Seis consulted with an attorney and was allowed to resign. When Seis left, McDonnell and Jan Harper (CFO of WAM) asked Kevin Bishop to fill the position on an interim basis. Bishop had been employed by WAM as the Museum Store Manager from 1999 through 2014. Bishop did not want the job and had to be asked three times before he agreed to do it.

When an interim position is open at the City, there is no formal application or interview process. Bishop began managing the security guards at WAM, including Plaintiff. In addition, Bishop oversaw all the physical maintenance of the museum, facility management, and a variety of other tasks.

---

[1] McDonnell controverts these statements.

In the spring of 2014, McDonnell contacted Olivia Hensley, a Human Resources Specialist employed by the City, to prepare a MOS job description. Hensley worked as the designated HR Specialist for multiple departments, including WAM. Part of Hensley's job duties included ensuring that City policies and procedures were followed during the hiring process. She also worked with WAM in hiring and firing employees.

The City uses its Neogov system (an electronic database) to post, apply, and submit information by the City about open employment positions. To apply for a position, the applicant must create a user account. After the account is created, the applicant applies for each position for which he or she chooses to apply. Applicants can also upload various relevant documents including resumes, or, if they seek veteran's preference during the process, a DD214 form (a Certificate of Release or Discharge from Active Duty).

After a position closes on Neogov, the HR Specialist reviews the applications. The application process can proceed in one of two manners. The Department Head can "rank" the applications and determine the top candidates they would like to interview for the position or the HR Specialist can create a list of interview candidates based on the applications and various City policies, including Veteran's Preference. At the end of this process, the HR Specialist determines whether or not the ranking process complies with equal opportunity laws and City of Wichita policies.

Alternatively, the Department Head can allow the HR Specialist to screen the applications and submit only those individuals who are qualified for an interview. The HR Specialist will provide a list of individuals whose applications met minimum qualifications. Individuals who submit applications but who are not qualified based on the information submitted are notified through a system-generated email that the application process ended and they were not selected.

On June 3, 2014, security guard Mary Hernandez slammed a steel door into Plaintiff's shoulder with such force that it cracked the laptop in Plaintiff's backpack. Hernandez told Plaintiff that she meant to do it. Plaintiff stated that McDonnell responded to the incident by telling Plaintiff that "being in the military I figured you would be able to handle it."

In early summer, McDonnell and Hensley worked together to finalize the previously prepared job description for the MOS. It was determined that the job would be open to applications for a minimum of three days. It was only open to City employees currently working at WAM. The 2014 MOS position required the following experience and education requirements:

> Graduation from a four-year college with a degree in criminal justice, business or public administration, or other related field, plus at least three years of experience in a museum environment, security or law enforcement related field, one of which is in a supervisory capacity. An equivalent combination of education, experience and training may be considered.

In June or July 2014, McDonnell and Harper had two meetings with Bishop to discuss with him the prospect of becoming the permanent museum supervisor. He expressed reticence at both meetings.

The City posted the MOS opening on July 21, 2014, through 3:00 p.m. on July 24, 2014, using its Neogov system. Harper called Bishop and told him the MOS position was open. Bishop did not want the job but believed that he was expected to apply, so he did. He felt it was either that or he would be out of work. While the posting was still open, Bishop called Plaintiff to let her know the MOS job was posted because he thought she may be a good fit for the position.

Plaintiff submitted her application for the MOS position on July 23, 2014. On her application, she listed her current position as "Security." She stated that she was in that position from 11/2009 through present. Plaintiff listed her duties as:

> Monitors security of property, art works on display. Against theft, fires and vandalism. Inventory artwork daily and hourly per shift. Able to recognize and report needed repairs to supervisor. Monitor security systems alarms and conditions. Develop and maintain a working relationship with all associates including the public. To communicate clearly and effectively, in person and in writing. Be able to run if needed too. Move quickly.

Plaintiff listed "2" in the box asking "# of employees supervised." She did not list any other jobs on her application.

Plaintiff and Bishop were the only two individuals who applied for the position. Once the posting closed, Hensley reviewed the two applications and screened them for minimum qualifications. Hensley testified that she used her training, experience, and HR professional expertise to evaluate applications. Hensley reviewed only the information that is contained on the application to determine the applicant's qualifications. When Hensley reviews applications for supervisory experience, she looks at the number of employees an applicant claimed to supervise and then compares that with the applicant's job title and listed job duties. Greer listed that she supervised two employees, but she did not list any supervisory experience. Hensley believed that Greer did not meet the minimum qualifications because she did not list any supervisory experience.

Harper called Hensley to see how the applications were coming along. Hensley told Harper that Bishop and Plaintiff had applied but that only Bishop qualified for the position because Plaintiff's application did not meet the minimum requirements. Harper put Hensley on hold and went to McDonnell's office. McDonnell then spoke to Hensley about the applications and verified the same information that Hensley had told Harper.

At 5:08 p.m. on the day the posting closed (July 24), a system-generated email from Hensley was sent to Plaintiff stating that her application "reflects insufficient experience and/or training" necessary for the position. The next morning, Plaintiff inquired about the email and

-6-

stated that she "must have left something out." Hensley responded by stating that "although you met the three years' work experience in a museum of security field," there was no experience listed indicating supervisory experience. Plaintiff emailed Hensley and stated that she had supervised for over four years and that she was a supervisor of events on the second shift. Plaintiff also stated that she thought by being a veteran that she would at least get an interview due to veteran's preference. At 8:20 a.m., Hensley responded by stating: "Unfortunately, that information was not listed on your application. Veteran's Preference is applied when an applicant meets the minimum qualifications. In this case, the minimum qualifications included the supervisory experience."

On July 28, Hensley emailed Plaintiff and attached a copy of Plaintiff's application for the position. Hensley noted that there was no information regarding supervision of others. She also informed Plaintiff to submit her DD214 (Certificate of Release or Discharge from Active Duty) to someone in HR so that it would be on file for future openings. Plaintiff responded that HR should already have a copy of her DD214. Hensley searched for Plaintiff's DD214.

With regard to Plaintiff's DD214 form, Plaintiff asserts that she gave a copy of it to human resources personnel in 2009 when she returned from active duty. Sharon Hunt-Cotman is the custodian of all DD214's for all employees of the City of Wichita. In 2009, she maintained copies of DD214 forms on her desk. Eventually, the City began to use Neogov, an electronic employment application database. When Hunt-Cotman received a DD214, she would scan it and place it in Neogov. Hunt-Cotman testified that she had no record of receipt of a paper DD214 from Plaintiff from 2009. On August 1, 2014, Plaintiff submitted her DD214 by fax, and Hunt-Cotman electronically uploaded it to Neogov that same day.

The City's Veteran's Preference policy states:

> Veterans who meet minimum qualifications in the Human Resources Department screening of applications will be scheduled for an interview by the hiring supervisor. Ten percent (10%) of the points earned during the interview will be added to the veteran's score by the hiring supervisor and the adjusted score used in the final rating of applicants.

Between July 24, 2014 (when the position closed), and August 6, 2014 (when the offer was made to Bishop), Plaintiff told Hensley that she did have supervisory experience and provided additional details to Hensley. Hensley did not accept this information. Hensley and several other HR professionals testified that there was no written policy prohibiting them from considering additional information, but it was standard procedure that they did not consider additional information from an applicant after the position closed.

Plaintiff and Hensley had an in-person meeting within a week from Hensley's email informing Plaintiff that she would not get an interview. In this meeting, Plaintiff informed Hensley of supervisory experience and her DD214. Plaintiff states that Hensley told her that "you don't know Patricia McDonnell, you do not know her. You don't know. She comes up here to HR, up here, and she is a tyrant. . . . Patricia's a tyrant and she's throwing fits. And she makes all of them scared. . . . And she wants you right where you are. So with that being done, you're not going to have—you're not going to go anywhere. And those is my instructions from her and that's why—that's you—you can put in all the applications you want."[2]

Hensley referred a single applicant, Bishop, for the MOS position for WAM to review. Bishop's application included that he had been the manager of the Museum Store and was the supervisor of the Museum store staff. Bishop is also a veteran who served in the Navy. On August 6, 2014, Bishop was offered the job without an interview because his application was the only one

---

[2] Hensley controverts that this conversation about McDonnell took place.

accepted and forwarded to WAM. Bishop resigned the position in March or April 2016 because he was unhappy in the position.

In October 2014, approximately four to five months after the Hernandez incident, McDonnell and Bishop had a meeting with Plaintiff. In this meeting, McDonnell issued Plaintiff a letter of counseling based in part on the Hernandez incident. The letter noted a "pattern of poor interaction with co-workers" in the recent months, including some verbal exchanges with several guards. Plaintiff stated that McDonnell told her that she was not a supervisor and that she will "not be nothing until you're out of the military." Plaintiff also states that McDonnell said something about "that military crap."[3]

Plaintiff brought suit in 2016. She claims that Defendants discriminated against her on the basis of her military status by not hiring her to the MOS position in the summer of 2014. Plaintiff asserts that had Hensley not disqualified her application, the City would have been required to allow her to interview and give her a 10% increase on her scores due to her veteran status. She claims that had she and Bishop been the only applicants interviewed for the position, it would be more likely than not that she would have received the position because Bishop did not want it.

Defendants now seek summary judgment. Defendant City of Wichita seeks summary judgment because it contends that there is no evidence that Plaintiff's military status was a factor in the employment action.[4] Defendants McDonnell and WAM assert that they are entitled to summary judgment because (1) WAM and McDonnell are not Plaintiff's employer and thus cannot be held liable under USERRA, (2) WAM and McDonnell had no ability to make an adverse

---

[3] McDonnell controverts that she said these things.

[4] Doc. 145.

decision as they are not Plaintiff's employer, and (3) even if WAM and McDonnell participated in the decision, there is no evidence that the decision was motivated by Plaintiff's military status.[5]

## II.   Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[6]  A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[7]  The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[8]  If the movant carries this initial burden, the nonmovant that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[9]  These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[10]  The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[11]

---

[5] Doc. 141.

[6] Fed. R. Civ. P. 56(a).

[7] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[8] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[9] *Id.* (citing Fed. R. Civ. P. 56(e)).

[10] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[11] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

### III. Discussion

Plaintiff contends that Defendants discriminated against her in violation of USERRA when they did not consider her for the MOS position in July 2014. Part of USERRA's purpose is "to prohibit discrimination against persons because of their service in the uniformed services."[12] 38 U.S.C. § 4311(a) provides

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

To analyze discrimination claims under USERRA, courts employ the evidentiary scheme set forth under the National Labor Relations Act.[13] Plaintiff must first show by a preponderance of the evidence that her military service was "a substantial or motivating factor in the adverse employment action."[14] " '[M]ilitary status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration.' "[15] To survive summary judgment, "the employee must establish a genuine issue of material fact as to whether [her] military status was a motivating factor in the adverse employment action."[16]

If the employee satisfies her burden, the employer then has the burden "to prove the affirmative defense that legitimate reasons, standing alone, would have induced the employer to

---

[12] 38 U.S.C. § 4301(a)(3).

[13] *Lewis v. Rite of Passage, Inc.*, 217 F. App'x 785, 786 (10th Cir. 2007) (citing *Nat'l Labor Relations Bd. v. Transp. Mgmt. Corp.*, 462 U.S. 393, 401 (1983)).

[14] *Id.* (quotation marks and citation omitted).

[15] *Id.* (quoting *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005)).

[16] *Id.* at 787.

take the same adverse action."[17]  "Unlike Title VII cases, however, where only the burden of production shifts to the employer and the burden of persuasion remains with the employee, under § 4311, once the employee establishes that his or her military service was a substantial or motivating factor in the adverse employment action, both the burden of production and the burden of persuasion shift to the employer."[18]  Thus, "[t]o prevail on summary judgment, the employer must then establish not just that it had a legitimate basis for taking the adverse employment action, but as a matter of uncontroverted fact that it would have taken the adverse employment action regardless of the employee's military status."[19]

In this case, Plaintiff attempts to establish liability based on the "cat's paw" doctrine.  This doctrine seeks to hold an "employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision."[20]  As stated by the United States Supreme Court, "if a supervisor performs an act motivated by antimilitary animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA."[21]  Thus, the question here is whether there is an issue of fact as to whether McDonnell (the supervisor) performed actions motivated by antimilitary bias, and those actions proximately caused the ultimate employment action (Hensley's decision to not forward on Plaintiff's application which then resulted in Plaintiff not being granted a job interview and/or the position).

---

[17] *Id.* at 786 (quotation marks and citation omitted).

[18] *Id*. at 786-87 (citations omitted).

[19] *Id.* at 787.

[20] *Staub v. Proctor Hosp*., 562 U.S. 411, 415 (2011) (citation omitted).

[21] *Id*. at 422.

For the purposes of this Order, the Court will assume that there is a question of fact as to whether McDonnell had an antimilitary bias. The Court concludes, however, that even if McDonnell had an antimilitary bias, there is no evidence that any of McDonnell's actions proximately caused or influenced the ultimate employment action. It is undisputed that the application process that the City and WAM set up allowed for Hensley, the HR Specialist, to screen the applicants to determine their qualifications and submit only those applicants who were qualified for the position. It is also undisputed that Plaintiff's application was lacking in the qualifications needed for the position. The position required supervisory experience. Plaintiff's application did not list any duties that she performed in a supervisory role. Instead, she listed basic duties and that she reported certain things to a supervisor. She listed her current position as "security" and did not indicate a supervisory role.[22] She did a check a box stating that she supervised two employees. However, there were no duties listed regarding supervision of others. Hensley testified that when she reviewed it for supervisory experience, she looked at the number of employees an applicant claimed to supervise and then compared it with the applicant's job title and listed job duties. Although Greer listed that she supervised two employees, she did not list any supervisory experience or duties. Hensley believed that Greer did not meet the minimum qualifications because she did not list any supervisory experience.

Within two hours of the position closing, a system-generated email from Hensley was sent to Plaintiff (at 5:08 p.m.), informing her that her application reflected insufficient qualifications

---

[22] Plaintiff testified that she believed that she had been assigned the title of Second Shift Supervisor. She, however, did not list this title/position on her application. Plaintiff stated that because she worked for the City, she believed that the City knew her position. Had Hensley looked at Plaintiff's position, however, it would have only listed Security because Plaintiff was never officially given this title (Second Shift Supervisor) nor were there any changes in her employment documents.

for the position. The next morning, and over the next week, Plaintiff emailed Hensley multiple times and spoke with Hensley in person explaining that she did have supervisory experience and her veteran status. Hensley's emails to Plaintiff stated that her application did not include supervisory experience. In addition, with regard to Plaintiff's inquiry about why her veteran status was not considered, Hensley informed her that she did not meet the minimum qualifications for the job and that a DD214 form was not on file. The veteran preference policy provides that only if an individual meets the minimum qualifications for the position will that individual receive veteran preference. Furthermore, the undisputed evidence (through Hensley and multiple HR individuals) demonstrates that it was the City's standard procedure to not consider additional information from an applicant once the position closed. Thus, Hensley's decision to not consider Plaintiff's additional information regarding her qualifications (supervisor experience) is in accordance with standard procedure and does not raise an issue of material fact.

In sum, Plaintiff provides no evidence that McDonnell influenced Hensley's screening decision. Plaintiff provides no evidence that the WAM Defendants (McDonnell and WAM) had the opportunity to review Plaintiff's application *prior* to Hensley making the decision. Furthermore, there is no evidence that any antimilitary bias by McDonnell influenced or proximately caused Hensley's decision to disqualify Plaintiff's application. Thus, Plaintiff cannot meet her burden in establishing a question of fact that her military status was a motivating factor in the employment action.

Even if Plaintiff could satisfy her burden, the second part of the test asks whether the employer can demonstrate that it had a legitimate basis for the decision and would have taken the adverse action regardless of the employee's status. As noted above in detail, Hensley testified that Plaintiff's application did not meet the minimum qualifications for the position and that Plaintiff

was not qualified for the job. Furthermore, Hensley's testimony established that the City does not contact applicants who appear unqualified after submission of the application to verify or attempt to find out additional information.[23] The City also does not consider additional information given by the applicant after the posting closes. Several other HR individuals corroborated that they would have done the same thing with Plaintiff's application that Hensley did in fact do. Accordingly, Defendants have produced evidence and can establish that the same action would have been taken regardless of Plaintiff's status.

**IT IS THEREFORE ORDERED** that Defendants McDonnell and WAM's Joint Motion for Summary Judgment (Doc. 141) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant City of Wichita's Motion for Summary Judgment (Doc. 145) is **GRANTED**.

**IT IS SO ORDERED**.

This case is closed.

Dated this 29th day of June, 2018.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[23] Plaintiff's reference to the City's handling of another application for a different position does not cast any doubt on the City's normal policy of not contacting applicants after applying. With regard to Plaintiff's evidence, she demonstrates that the City contacted an applicant after he submitted his application to follow up on information. In that case, contact was made to verify whether the individual wanted part-time or full-time work. The City did not make contact to ascertain whether he was qualified for the position for which he applied. Thus, there is no similarity in the circumstances.